**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

———————————————————————
                              :

JOSEPH ARUANNO,               :            Civil No. 11-2505 (WJM)
                              :

                Plaintiff,      :

                              :              **OPINION**

           v.                 :

                              :

WILLIAM T. WALSH,        :

                              :

                Defendants.   :

———————————————————————:

**APPEARANCES:**

      JOSEPH ARUANNO, #363
      Special Treatment Unit- Annex
      P.O. Box #CN905
      Avenel, NJ 07001

**MARTINI**, District Judge:

      Joseph Aruanno, who is civilly committed under the New Jersey Sexually Violent

Predator Act, seeks to file a Complaint against William T. Walsh, Clerk of the Court.  See 28

U.S.C. § 1915(a).  This Court will grant Plaintiff's application to proceed in forma pauperis.

This Court has screened the Complaint for dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B) and,

for the reasons explained below, will dismiss the Complaint with prejudice for failure to state a

claim upon which relief may be granted.  See Tucker v. Arnold, 361 Fed. App'x 409 (3d Cir.

2010).

**I.  BACKGROUND**

      Plaintiff has been civilly committed as a sexually violent predator since 2004.  As

explained by the Third Circuit Court of Appeals,

[i]n 1994, while in Florida, he exposed himself to two adolescent girls as they were walking home from school and engaged in lewd conduct in their presence.  As a result of this incident, Aruanno pled guilty to second-degree lewd conduct, and was sentenced to ten years' probation.  Just two years later, in 1996, Aruanno sexually molested an eight-year-old girl who had been playing on the front steps of her house in Wildwood, New Jersey.  A jury convicted Aruanno of second-degree sexual assault, and he was sentenced to ten years in prison, and disqualification from parole for five years.  The Appellate Division of the New Jersey Superior Court affirmed the conviction and sentence.  The New Jersey Supreme Court denied certification.  State v. Aruanno, 793 A. 2d 716 (N.J. 2002) (table op.).

In April 2004, while Aruanno was still serving his prison sentence, the State of New Jersey . . . filed a petition to involuntarily commit Aruanno pursuant to the New Jersey Sexually Violent Predator Act ("SVPA), N.J.S.A. § 30:4-27.24 et seq.  . . . .

At the commitment hearing, the State presented the testimony of Dr. Vivian Shnaidman . . . .  Dr. Shnaidman testified that Aruanno was a chronic paranoid schizophrenic, but her diagnosis explicitly ruled out diagnoses of exhibitionism and pedophilia.  Nevertheless, Dr. Shnaidman opined that Aruanno's schizophrenia, when combined with his previous violent conduct, created a "very high" risk of future violence.  In particular, because Aruanno refused to take psychotropic medication to treat his schizophrenia, he would continue to suffer from psychotic delusions which would render sex offender treatment useless.  According to Dr. Shnaidman, Aruanno would have serious difficulty controlling his sexually predatory behavior without undergoing treatment for his schizophrenia . . . .

Aruanno testified on his own behalf at the hearing.  He denied committing either the Florida or the New Jersey offense, and testified that he believed the State had filed the commitment petition in retribution for his decision to go to trial for the New Jersey offense, rather than accepting a deal to plead guilty . . . .

The state court found that Aruanno suffered from a mental abnormality which created "substantial, significant, severe difficulty controlling his sexually violent behavior," and granted the State's petition for involuntary commitment.  Aruanno

2

appealed the order, and the Appellate Division affirmed.  In re
Civil Commitment of J.A., 2007 WL 609284 (N.J. Super. Ct. App.
Div. 2007).

Aruanno v. Hayman, C.A. No. 09-3499 slip op., pp. 2-4 (3d Cir. May 27, 2010).

In 2009, the Appellate Division of the New Jersey Superior Court reversed the Law

Division's May 3, 2007, order denying post-conviction relief on the New Jersey conviction,

vacated the conviction, and remanded the case.[1]  See State v. Aruanno, 2009 WL 1046033 (N.J.

Super. Ct. App. Div. April 21, 2009), certif. denied, 199 N.J. 543 (2009) (table).

Since being detained in New Jersey, Mr. Aruanno has filed over 28 civil cases in this

Court, and 27 appeals in the United States Court of Appeals for the Third Circuit.

In the Complaint[2] presently before this Court, Plaintiff asserts the following facts:

> Please accept this complaint in place of a more formal ethics,
> and/or criminal complaint against Clerk William T. Walsh.
>
> The reason I submit this complaint is because I have been trying to
> file complaint(s) under 42 U.S.C. § 1983 but he refuses to file them
> for no valid reason other than to obstruct justice.
>
> One case at issue is titled "JOSEPH ARUANNO V. DENNIS
> CAVANAUGH," which is probably the main reason for such a
> conspiracy and criminal neglect, was dated May-29-10 and first
> submitted at that time for which W. Walsh failed/refused to file the
> claim or even reply.

---

[1] This Court was not able to determine through online research the outcome of the
remand.

[2] On April 20, 2011, Chief Judge Garrett E. Brown, Jr., received a letter from Plaintiff
with a document attached, which Plaintiff described as a "complaint against Mr. William T.
Walsh, Clerk."  (Docket Entry #1, p. 1.)  Attached to the letter was a two page "Ethics Complaint
Against Clerk William T. Walsh," which this Court construes as a civil complaint.  (Docket
Entry #1, p. 2.)

3

Then since there was no reply to this case being submitted as an EMERGENT matter asking the court to EXPEDITE I called the court on 8/30/10 only to be told there was no case on file for which I then wrote the court and received a reply dated 9/29/10 stating "THERE IS NO CASE FILED" under that title.

So then I resubmitted another copy, at great time and expense to myself, on 10/5/10 which was replied to on 10/26/10 stating I "MUST SEND IT TO THE COURT OF APPEALS" which I did only to be informed by that court it was not the correct jurisdiction.

At that point I called the clerk yet once again at great time and expense to myself during December-2010 and spoke to Cheryl whom said she "WOULD LOOK INTO IT AND GET BACK TO ME EITHER BY PHONE OR IN WRITING" which she never did. At that point I decided to call one last time and spoke to her on 1/11/11 for which she admitted she never replied for which I then said I was going to file ethics complaints . . .

And with that I decided to give the court one last chance and sent a "FINAL NOTICE" making clear of my intentions to submit this ethics complaint, a malpractice lawsuit, criminal complaints and any other avenue available to me.  Where I received a letter back dated 2/2/11 stating yet once again "SEND IT TO THE COURT OF APPEALS."

At that point just to make everything totally clear . . . , I was advised by counsel to submit it one last time to the Court of Appeals where on 3/9/11 Clerk Marcia Waldron forwarded it to Clerk William Walsh and for which I now engage in the pursuit of justice here as well.

Also I must add to this the fact that I have also submitted another complaint titled "JOSEPH ARUANNO V. PAUL FISHMAN" during August-2010, certified mail as usual, where W. Walsh also states he "DID NOT RECEIVE IT" and where I sent it one last time certified mail again, not willing to play into the game this time and which is also an issue in this complaint.

In closing I was also advised by counsel to point out that had Cavanaugh or the Office of the U.S. Attorney acted in any way on nearly one thousand legal actions submitted since Case No. 01-789, no others would have had to be submitted since then.  But

4

instead Judge Cavanaugh and the Office of the U.S. Attorney in Newark chose to become accomplices and co-conspirators in a serious of violent brutal assaults, murders, attempted murders, and other civil rights violations instead of upholding their ethical and moral obligations . . . .

And for which the game use to be for the clerk to file the case but then the court refuse to comply or act.  Which includes case(s) such as No. 04-3066, 07-1212, etc., but now these cases are being stopped before they even get to judiciary for which I demand that such criminal conduct be addressed immediately in the interest of justice.  Which includes censure and reproach for William Walsh whom I have addressed my certified mailings to personally.  As well as in his supervisory capacity.

And which also includes having court file these two cases as of the dates on them and treating these case as EMERGENT matters expediting them as filed, especially considering the harm such undue delay has already caused and the continuing harm by the defendants in those cases as well as by their co-conspirators and the crimes they continue to engage in.

(Docket Entry #1, pp. 1-3.)

## II.  STANDARD OF REVIEW

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a District Court to screen a complaint in a civil action in which a plaintiff is proceeding in forma pauperis and to sua sponte dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2)(B).

5

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), hammered the "final nail-in-the-coffin" for the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[3] which was previously applied to determine if a federal complaint stated a claim.  See Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009).  The pleading standard under Rule 8 was refined by the United States Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), where the Supreme Court clarified as follows:

> Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . .  Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

---

[3] The Conley court held that a district court was permitted to dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. at 45-46.

Iqbal, 129 S. Ct. at 1949 -1950 (citations omitted).

Since Iqbal, the Third Circuit has required district courts to conduct a three-part analysis

when reviewing a complaint for dismissal for failure to state a claim:

> To determine the sufficiency of a complaint under the [Iqbal]
> pleading regime . . . , a court must take three steps:  First, the court
> must "tak[e] note of the elements a plaintiff must plead to state a
> claim."  Iqbal, 129 S. Ct. at 1947.  Second, the court should
> identify allegations that, "because they are no more than
> conclusions, are not entitled to the assumption of truth."  Id. at
> 1950.  Finally, "where there are well-pleaded factual allegations, a
> court should assume their veracity and then determine whether they
> plausibly give rise to an entitlement for relief."  Id.

Santiago v. Warminster Tp., 629 F. 3d 121, 130 (3d Cir. 2010) (footnote omitted).

The Court is mindful that the sufficiency of this pro se pleading must be construed

liberally in favor of the plaintiff, even after Iqbal.  See Erickson v. Pardus, 551 U.S. 89 (2007).

### III.  DISCUSSION

A court's initial task is to "tak[e] note of the elements [Plaintiff] must plead" in order to

state a claim of liability under 42 U.S.C. § 1983.  See Iqbal, 129 S Ct. at 1947-48.  Section 1983

provides in relevant part:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory . . . subjects,
> or causes to be subjected, any citizen of the United States or other
> person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and
> laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

To recover under 42 U.S.C. § 1983, a plaintiff must show two elements:  (1) a person

deprived him or caused him to be deprived of a right secured by the Constitution or laws of the

United States, and (2) the deprivation was done under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988).

In this case, without describing what the Clerk himself did, Plaintiff concludes that the Clerk "refused" to file two complaints which Plaintiff claims he mailed to the Clerk for filing, i.e., one complaint naming Judge Cavanaugh as defendant, and the other complaint naming the United States Attorney for the District of New Jersey as defendant. This Court takes judicial notice of the court's docket.  While the docket contains no record of any civil action brought by Plaintiff against Judge Cavanaugh, the docket shows that the Clerk received a complaint against Paul Fishman on August 6, 2010, see Aruanno v. Fishman, Civil No. 10-4085 (WJM) (D.N.J. docketed Aug. 6, 2010), and received the identical complaint against Paul Fishman on February 7, 2011, see Aruanno v. Fishman, Civil No. 11-0880 (WJM).  In any event, this Court construes Plaintiff's complaint in this case as an attempt to assert a First Amendment access to courts claim against the Clerk for failing to file civil complaints Plaintiff submitted to the Clerk.

"Like prisoners, individuals who are involuntarily committed to a mental institution have the right to access the courts."  Tucker v. Arnold, 361 Fed. App'x 409, 409 (3d Cir. 2010). Standing of civilly committed persons to pursue an access to courts claim is governed by Lewis v. Casey, 518 U.S. 343, 349 (1996).  See Tucker, 361 Fed. App'x at 411.  "Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury' - that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy' that may be awarded as recompense' for the lost claim other than in the present denial of access suit." Monroe v. Beard, 536 F. 3d 198, 205 (3d Cir.), cert. denied, Stover v. Beard, 129 S. Ct. 1647

8

(2008) (quoting <u>Christopher v. Harbury</u>, 536 U.S. 403, 415 (2002)).  "The complaint must

describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and

it must describe the 'lost remedy.'"  <u>Monroe</u> at 205-206 (quoting <u>Christopher</u> at 416-17).  For

example, in <u>Monroe</u>, the United States Court of Appeals for the Third Circuit affirmed dismissal

of inmates' access to the courts claim for failure to state a claim:

> In this case, the defendants confiscated all of the plaintiffs' . . .
> legal materials, including their legal briefs, transcripts, notes of
> testimony, exhibits, copies of reference books, treatises, journals,
> and personal handwritten notes.  In their initial pleadings, the
> plaintiffs' claim rested solely on the ground that the defendants
> confiscated their legal materials, contraband and non-contraband
> alike.  That claim, on its face, was insufficient to state a claim
> under <u>Harbury</u>.  So too were their subsequent amendments, which
> alleged that they lost the opportunity to pursue attacks of their
> convictions and civil rights claims but did not specify facts
> demonstrating that the claims were nonfrivolous.  Nor did they
> maintain that they had no other remedy to compensate them for
> their lost claims.  Even liberally construing their complaints as we
> must do for <u>pro se</u> litigants, they do not sufficiently allege that they
> have suffered actual injury.

<u>Monroe</u>, 536 F. 3d at 206 (citations and footnote omitted).

In this Complaint, Plaintiff sues the Clerk of the Court, asserting that he mailed a

complaint against Judge Cavanaugh on May 29, 2010, to the Clerk's Office, but the Clerk's

Office had no record of receipt; he resubmitted a copy to the Clerk's Office on October 5, 2010;

he received written responses dated October 26, 2010, and February 2, 2011, from an unspecified

person which presumably suggested that Plaintiff's dissatisfaction with Judge Cavanaugh could

be addressed in an appeal to the Court of Appeals.  Plaintiff further asserts that he mailed a

complaint against Paul Fishman to the Clerk's Office in August 2010 (which the Clerk in fact

docketed on August 6, 2010, <u>see</u> <u>Aruanno v. Fishman</u>, Civil No. 10-4085 (WJM)  (D.N.J.

docketed Aug. 6, 2010)) and, believing that the Clerk had not received this complaint, he re-mailed the complaint to the Clerk's Office on an unspecified date (and the Clerk docketed the complaint a second time on February 7, 2011, see Aruanno v. Fishman, Civil No. 11-0880 (WJM) (D.N.J. docketed Feb. 7, 2011)).

This Court will dismiss the Complaint because (assuming that Plaintiff had standing to assert an access to courts claim) it fails to assert facts describing any wrongdoing by the Clerk himself. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior* [and] a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 129 S. Ct. at 1948. In Iqbal, the Supreme Court rejected the proposition that a supervisory defendant can be liable for "knowledge and acquiescence in their subordinates' [misconduct.]" Id.

> [Plaintiff's] conception of 'supervisory liability" is inconsistent with his accurate stipulation that [persons] may not be held accountable for the misdeeds of their agents. In a § 1983 suit or a Bivens action - where masters do not answer for the torts of their servants - the term "supervisory liability" is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.

Iqbal, 129 S. Ct. at 1949.

As Plaintiff fails to assert facts showing that the Clerk violated Plaintiff's federal rights, the Complaint fails to state a claim against the Clerk under the Iqbal pleading standard and will be dismissed for that reason.

Generally, a District Court will grant a plaintiff leave to file an amended complaint where the complaint is dismissed under Iqbal. But in this case, this Court will dismiss the Complaint

with prejudice because amendment of the Complaint to name additional defendants and/or state additional facts would be futile. The allegations in the Complaint indicate that, at worst, one or more persons in the Clerk's Office may have been negligent in failing to discern Plaintiff's desire to file a civil complaint against Judge Cavanaugh.[4]  But negligent conduct "is insufficient to sustain a basis for liability on a denial of access [to courts] claim under 42 U.S.C. § 1983 [and Bivens]."  Tucker, 361 Fed. App'x at 410.  Moreover, Plaintiff's allegations in the Complaint are inconsistent with a finding that one or more persons in the Clerk's Office "intentionally or deliberately refused to process or file his complaints."  Id.

Amendment of the Complaint would be futile for another reason - Plaintiff cannot establish that he lost the chance to pursue a nonfrivolous civil action against Judge Cavanaugh or Paul Fishman as a result of the alleged failure to docket his complaints.  The Clerk did docket the complaint against Paul Fishman.  Although no case was docketed against Judge Cavanaugh, Plaintiff "could have simply re-sent the complaint[] to the [Clerk]."  Tucker, 361 Fed. App'x at 410.  Moreover, the purported complaint against Judge Cavanaugh was not a nonfrivolous legal claim, as it would have been subject to dismissal on the ground of absolute judicial immunity.  See Azubuko v. Royal, 443 F. 3d 302, 303 (3d Cir. 2006) ("A judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for judicial acts"); see also Dennis v. Sparks, 449 U.S. 24, 27-28 (1980); Gallas v. Supreme Court, 211 F. 3d 760, 770 (3d

---

[4] This Court notes that on March 30, 2010, Judge Cavanaugh denied a preliminary inunction to Plaintiff and other plaintiffs in the consolidated case entitled Alves v. Ferguson.  See Alves v. Ferguson, Civil 01-0789 (DMC) order (D.N.J. Mar. 30, 2010).  Plaintiff asserts here that he submitted his original complaint against Judge Cavanaugh on May 29, 2010.  Plaintiff's disagreement with the order denying a preliminary injunction could have been addressed by an appeal to the Third Circuit.

Cir. 2000).  Because Plaintiff could not remedy the defects in the instant Complaint by

amendment, the dismissal of the Complaint will be with prejudice.

## IV.  CONCLUSION

For the reasons set forth above, the Court will grant Plaintiff's application to proceed <u>in

forma</u> <u>pauperis</u> and dismiss the Complaint with prejudice.

s/William J. Martini

_____

**WILLIAM J. MARTINI, U.S.D.J.**

Dated: <u>June 8, 2011</u>